## ISABELLA M'CULLOUGH'S HEIRS *v.* JOHN GILMORE.

A testator, after directing that "all his worldly substance shall be disposed of"—proceeds to say that it is his will and desire that a certain farm "fall into the possession of W., laying this injunction and prohibition, not to leave the same to any but the legitimate heirs of W.'s father's family at his, W.'s, decease." *Held*, that this evinces a general intent to give the fee to W., with an apparent particular intent in relation to the power of alienation, which particular intent is void, because inconsistent with a reasonable enjoyment of the fee, and also for uncertainty.

ERROR to the District Court of Allegheny.

*Sept.* 4. This was a case stated, in the nature of a special verdict in ejectment, in which the heirs of Isabella M'Cullough, claiming one-seventh of the land in controversy, were plaintiffs, and John Gilmore, the tenant in possession of the land, was defendant.

Henry Huey, William Huey, and Isabella M'Cullough, the mother of the plaintiffs, were children of John Huey, deceased. Of John Huey's children, seven are alive, or have died leaving descendants. In 1822 Henry Huey made his will and died. In that will he makes the following disposition of the land in controversy: Whereas I own a small tract of land in St. Clair township, I give and bequeath the rents, &c., of the same for ten years, to my niece R. C., on certain conditions specified; "and after that term it is my will and desire that it fall into the possession of my brother William, laying this injunction and prohibition, not to leave the

same to any but the legitimate heirs of his father's family, at his decease."

William took possession of the land so devised, and at the time of his death it was occupied by Gilmore, his tenant. By William's will this land, after a certain time, was to be sold, and the balance of the purchase-money, after paying certain bequests, was to be invested, and, after the death of his widow, was to be paid to the testator's daughter.

The court below entered judgment for the defendant, which action of the court was assigned for error.

*Shaler* and *Austin*, for the plaintiff in error. — Henry Huey intended that William should take but a life-estate. There are no words of limitation to this devise, and the devisee will take that estate in the land, unless there appears a plain intention to give a larger estate. Without that intention is expressed with reasonable certainty, the law will not allow the heir to be disinherited: Wright *v.* Dean, 6 Peters' Cond. R. 80; Coates' Appeal, 2 Barr, 129.

The words "fall into the possession of" cannot be construed as intending any estate larger than for life: Wright *v.* Dean; Goodright *v.* Barrow, 11 East, 220; Dewitt *v.* Eldred, 4 W. & S. 419. Nor do other parts of the will show any such intention.

The words "laying this injunction, &c. &c.," can mean only one of these two things—that William should not attempt at all to meddle with the fee in remainder, so as to give it any other direction than the statute of descent would give it; or, second, that he should leave a power to transmit it, in the manner pointed out, to the persons specified.

If it is the first, the devise would be a life-estate to William, with remainder in fee to the legitimate heirs of his father's family, to wit, the heirs at law of old John Huey, to take according to the statute of descents.

If the second, it would be a life-estate to William, with a power "to leave" the remainder in fee to the legitimate heirs of his father's family.

This is not a general, but a special power: Sugden's Powers, 432; 4 Kent, 318 : and so cannot enlarge this devise into a fee, without a manifest intent to do so : Sugden, 319. "To leave" authorizes a transmission only by will : 10 East, 438; Boyd *v.* Bigham, 4 Barr, 102. As a special power, it cannot enlarge the estate.

The legitimate heirs of his father's family are the heirs of John

Huey: 17 Vez. 255; 5 M. & S. 126; Sugden, 522. The statute of descents ascertains them: Haskin's Appeal, 3 Barr, 307; M'Neillege *v.* Galbraith, 8 S. & R. 43. The will of William is no execution of the power : Wood's Est. 1 Barr, 368. Boyd *v.* Bigham, *suprà :* and so the legitimate heirs of his father's family take in equal shares.

*Washington* and *Mahon,* contrà.—1. William took an estate in fee. The introductory words of the will evince the intention of the devising clause—the testator intends to dispose of all his estate: Cassell *v.* Cook, 8 S. & R. 289; Bushby *v.* Bushby, 1 Dall. 226. The testator recognises his devisee's right to devise the land, but seeks to restrain it in a particular direction. The right "to leave" the land, however, was derived from the fee already given, for, if it is sought in the restraining clause, it will be found by implication only. He must have understood that he had given a fee, and, if so, he had given it.

2. But, if he did not take a fee, then the devisee took a life-estate with power to appoint in fee: 1 Sugden, 120, 121. Such a power includes a power *to* sell, in order *to* give the money instead of the land: 1 Sug. 509, 510; 1 Ves. & Bea. 478; 1 Eq. Cas. 668–9, pl. 19. The appropriation of this money by William is within the scope of his power: 1 Mod. R. 189 ; 5 Ves. Jr. 857; 2 Vern. 515; 1 P. W. 149; 1 Atk. 309; 1 T. R. 435; Ambler, 660 ; 1 Sugden, 562.

The opinion of this court was delivered by

COULTER, J.—The most harassing duty which devolves on the courts is the interpretation of wills, in which the testator has often no clear or distinct intention present to his own mind, or if he has, he lacks the power of expressing it. We are often compelled to draw light from that which is obscure, and give distinctiveness to that which is vague and glimmering.

In this case, there was doubtless present to the testator's mind, when making the devise in question, a general intent to give a fee to his brother William. He first directs that " all his worldly substance and property shall be disposed of in the following manner."

These words, and the like of them, are generally carried down into the *corpus* of the will, to show that the testator meant to dispose of his whole interest in a particular devise, unless words are used which plainly indicate an intent to limit it. The devise is as follows : "After that term, it is my will and desire that it *fall* into

the possession of my brother William, laying this injunction and prohibition, not to leave the same to any but the legitimate heirs of his father's family at his decease." The land is to *fall* into his brother's possession; words more expressive than the word to give or grant: as the tree *falls*, so it lieth. It is a word much in use in common speech, to indicate that lands become the property or estate of a particular person, upon the occurrence of a particular event; *exempli gratiâ*, "The land *falls* to him upon the death of his mother." But the very employment of the words of injunction or prohibition, which the plaintiffs contend are inconsistent with the fee, shows that the testator designed to give a fee. For they show that the devisee was to enjoy the land during his life, and to dispose of it by will at his death. It is needless to speak about a power of appointment, because this testator had probably never heard of a power of appointment in a will; knew neither its office, its effect, or design. But he had an impression, obviously, that he could control or limit the enjoyment of the fee. But the words used do not limit the estate to a conditional fee, a fee-tail, or an estate for life. It must, therefore, be considered a fee-simple. Because the manifest general intent is to give a fee-simple, with an apparent ‧ particular or secondary intent to limit its enjoyment, in a manner inconsistent with, and repugnant to, the inseparable incidents of such an estate.

A general restraint upon the alienation of a fee would be void. A partial restraint has been allowed, when it was not inconsistent with a reasonable enjoyment of the fee: as that the devisee shall not alien to a particular person or in mortmain, Coke Litt. 223 a. And in the case of M'Williams *v.* Neely, 2 S. & R. 513, Chief Justice Tilghman, in asserting the general doctrine, that, when an estate is given, any restraint upon it which destroys its character is void, acknowledges the doctrine of the case in Leonard, that a partial restriction not inconsistent with a reasonable enjoyment of the fee is good. In this case, however, the restriction is uncertain. Whom did the testator mean by the heirs of his *father's family* ? A man's family may be considered as his household at a particular period; or, as his race or generation. There is nothing in the will to designate or describe what the testator meant by his father's family. A family, in its collective or aggregate capacity, can have no heirs. We are, therefore, all in the dark as to whom the testator intended to designate by the use of the words, "heirs of his father's family." We may, perhaps, indulge a reasonable conjecture that he intended to describe the heirs of his father. If so,

2 I

as William was never married, and left brothers and sisters, and children of deceased brothers and sisters, who were the legitimate heirs of his father, and who were also his own heirs, the devise would then be to William and his heirs, and a restriction, that he should not devise it to any but his own heirs. Such a restriction would be totally inconsistent with a reasonable enjoyment of the fee, and hostile to the characteristic qualities of a fee. No case has carried the doctrine of partial restraint upon alienation to anything like the length that this would go. It is necessary that the symmetry of the fee-simple estate should be preserved. It is the simplest and best form of estate, for the structure of our social condition.

The testator had a manifest general intent to give a fee-simple in the land to his brother William; he had an obscure, uncertain, and ill-defined particular or secondary intent in relation to the power of alienation, which would be inconsistent with a reasonable enjoyment of the fee, and which is, therefore, void; and void also for uncertainty.

William Huey, under whom the defendant claims, took a fee-simple in the land in dispute. This rules the whole case.

Judgment affirmed.